## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARET ARMAH, | |
| Plaintiff, | |
| v. | Civil Action No. 22-1714 (BAH) |
| UNITED STATES DEPARTMENT OF STATE, *et al.*, | Judge Beryl A. Howell |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Margaret Armah, a citizen of the United States, seeks to compel defendants, U.S. Department of State; U.S. Embassy in Accra, Ghana; and Antony Blinken, Secretary of the U.S. Department of State, and Virginia E. Palmer, U.S. Ambassador of the U.S. Embassy in Accra, Ghana, in their official capacities (collectively, "Defendants"), to adjudicate the visa petition of her daughter, Tracey E. Baiden, which petition was pending before defendants without decision for nearly two years at the time she initiated this lawsuit.  Compl. ¶¶ 1–6, 10, 16–17, ECF No. 1. Plaintiff claims that defendants have unreasonably delayed adjudication of her daughter's visa application, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, *id.* ¶¶ 7, 21–22, and have done so intentionally by applying the policies of the Controlled Application Review and Resolution Program ("CARRP") to their review of the visa application, *id.* ¶¶ 24–30, in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, *id.* ¶ 31.  Plaintiff also alleges violation of her due process rights under the Fifth Amendment.  *Id.* ¶¶ 34–37.  Defendants now move to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim

under Rule 12(b)(6).  Defs.' Mot. Dismiss ("Defs.' Mot.") at 1, ECF No. 16.  For the reasons explained below, defendants' motion is granted.

## I.     BACKGROUND

A review of the statutory and regulatory background underlying the claims is below, followed by a summary of the factual and procedural history of this case.

### A.     Statutory and Regulatory Background

The INA allows for the issuance of immigrant visas, including for relatives of U.S. citizens. *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1), (b).  A U.S. citizen seeking permanent resident status for an adult child or other family member may fill out a Form I-130, Petition for Alien Relative, with the Department of Homeland Security's U.S. Citizenship and Immigration Services ("USCIS").  *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1); *see also* 8 U.S.C. § 1151(b)(2)(A)(i) (defining an "immediate relative[]" as including "children . . . of a citizen of the United States" for purposes of Form I-130 petitioners).  If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC") for processing.  8 C.F.R. § 204.2(d)(3)(1).  NVC serves as the visa application processing center for the U.S. Department of State ("State Department").  *Id.*

Following approval of the petition, the foreign relative must submit paperwork and processing fees to NVC.  *See* 22 C.F.R. § 42.67 (outlining application fees and additional documentation that an applicant must submit to NVC to complete their application).  After processing the requisite materials, NVC schedules a consular interview for the applicant at the embassy with jurisdiction over the applicant's residence.  *Id.* § 42.62.  The consular officer must issue or refuse the visa following the interview.  *Id.* § 42.81(a).

### B.     Factual Background

On March 31, 2015, plaintiff filed an I-130 visa petition with USCIS on behalf of her daughter, Tracey E. Baiden.  *See* Compl. ¶¶ 10, 13.  Plaintiff intended to secure lawful permanent

resident status for Ms. Baiden, who currently resides in Ghana, to enable her to join plaintiff in the United States. *See id.* ¶¶ 2, 11. On May 4, 2015, USCIS approved plaintiff's visa petition and transferred the petition to NVC. *See id.* ¶¶ 15–16. On June 17, 2020, NVC indicated that the visa petition for Ms. Baiden was "documentarily qualified" and awaiting scheduling for an interview. Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 6, ECF No. 17 (citing Pl.'s Opp'n, Ex. A, Affidavit of Margaret Armah ("Armah Aff.") ¶ 6, ECF No. 17-1).

Since June 2020, when the petition was documentarily qualified, however, NVC "has refused . . . to conduct an interview," despite plaintiff's multiple efforts to contact the State Department about the matter. *See id.* at 2 (citing Compl. ¶¶ 17–18).[1] Plaintiff alleges that, as a result, she and her daughter have been "irrevocably harmed" by the family separation, Compl. ¶ 37, particularly since April 2021, when plaintiff underwent lung mass surgery, Pl.'s Opp'n at 2–3. Two years after the procedure, plaintiff continues to require her daughter's "help with daily activities" and "care and emotional support," and to ensure that plaintiff receives "proper medical care." *Id.* (citing Armah Aff. ¶ 11).

### C.    Procedural History

On June 14, 2022, roughly twenty-four months after NVC's last notification stating that the visa petition for Ms. Baiden was "documentarily qualified," plaintiff filed the instant petition with two causes of action, seeking, among other requested relief, an order "compelling Defendants to adjudicate a long-delayed immediate relative visa application." Compl. at 2; *see also id.* at 7–8 (Request for Relief). Plaintiff maintains that defendants retain jurisdiction over her daughter's visa application and have a "non-discretionary duty to conclude agency matters" within a

---

[1]    Defendants state that "technically, the last Government action on" plaintiff's daughter's visa application "was in July 2020," when the "priority date of the visa . . . bec[ame] current," but they nevertheless identify June 17, 2020, as the date of the last action taken by the government on plaintiff's daughter's visa application. *See* Defs.' Mot. at 3 & n.2.

"reasonable time," which duty she seeks to enforce with relief under the APA and the Mandamus Act. *Id.* ¶¶ 7, 20–21 (citations omitted). She also claims that defendants have unlawfully delayed her daughter's visa application pursuant to CARRP, a Department of Homeland Security program, which allegedly "intentionally delays the applications of applicants . . . from a predominantly Muslim country" "due to security concerns," in violation of the INA. *Id.* ¶¶ 24–25, 31. As a result of the delay, plaintiff further claims she has suffered deprivation of her due process rights under the Fifth Amendment. *Id.* ¶¶ 35–36.

On November 17, 2022, upon the joint request of the parties, this case was stayed pending resolution of plaintiff's request that USCIS maintain Ms. Baiden's case under the F2B visa category (applicable to unmarried adult children of a permanent resident) "so that the priority date" for processing Ms. Baiden's visa application "would remain current," though Ms. Baiden's visa category had "automatically changed to" F1 (applicable to unmarried children of a U.S. citizen) when plaintiff became a naturalized citizen. Jt. Mot. to Hold Case in Abeyance at 1–3, ECF No. 12; *see* Min. Order (Nov. 17, 2022). On February 6, 2023, upon notification by the parties that USCIS had granted plaintiff's request to maintain Ms. Baiden's F2B visa category and that "no stipulation of dismissal will be filed at this time," the stay was lifted and a schedule set for the filing of defendants' answer or other response to plaintiff's complaint. *See* Min. Order (Feb. 6, 2023); Jt. Status Rep. at 1, ECF No. 13.

On March 22, 2023, defendants moved to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. at 1.[2] With the filing of plaintiff's

---

[2]     Defendants filed, with no opposition from plaintiff, an "amended" Motion to Dismiss on the same day their initial motion was filed, and the amended motion is deemed the operative one here. *See* Defs.' Mot. Dismiss, ECF No. 15 (filed Mar. 22, 2023); Defs.' Mot. (filed Mar. 22, 2023).

opposition, and no reply—timely or otherwise—by defendants, the pending motion is ripe for resolution.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023).   In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555 (citations omitted).   Courts do not, however, "assume the truth of legal conclusions . . . or 'accept inferences that are unsupported by the facts set out in the complaint.'" *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007), and citing *Iqbal*, 556 U.S. at 678, and *Kareem v. Haspel*, 986 F.3d 859, 865–66 (D.C. Cir. 2021)).   "In determining whether a complaint fails to state a claim," a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Marshall's Locksmith Serv. Inc. v. Google*, LLC, 925 F.3d 1263, 1271–72 (D.C. Cir. 2019) (alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III.    DISCUSSION

Defendants argue that dismissal of the complaint is required because plaintiff's claimed delay in the adjudication of her daughter's visa is "not unreasonable as a matter of law under the

factors identified in *Telecommunications Research & Action Center*[.]"  Defs.' Mot. at 1, 14–23 (citing *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).   In addition, defendants argue that plaintiff's CARRP claims are conclusory and lack any kind of factual basis, *id.* at 23–25, and that the delay does not support any claimed violation of plaintiff's due process rights, *id.* at 25–27.[3]  Notwithstanding plaintiff's understandable frustration with the processing of her daughter's visa petition, particularly at a time when plaintiff's health circumstances would benefit from her daughter's presence with her in the United States, defendants are correct.

## A.   The Alleged Delay in Decision on Plaintiff's Application Is Not Unreasonable, Requiring Dismissal of Claims for Failure to State a Claim.

Defendants contend that plaintiff's allegations about the delay in adjudicating her daughter's visa application, even assumed to be true, are insufficient to state a plausible claim for

---

[3]     Defendants also seek dismissal for lack of subject matter jurisdiction to adjudicate this dispute under the APA or Mandamus Act because no clear non-discretionary duty has been violated.  Defs.' Mot. at 7–13; *see also Da Costa*, 80 F.4th at 340 ("To state a claim for unreasonable delay, Plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take[.]" (quotation marks and citation omitted)).  The Court assumes, without deciding, that a mandatory non-discretionary agency action applies here in the form of the statutory requirement that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(b); *see also* Compl. ¶¶ 20, 31 (plaintiff also alleging that APA's requirement that "'within a reasonable time, each agency shall proceed to conclude a matter presented to it' . . . creates a non-discretionary duty to conclude agency matters" (quoting 5 U.S.C. § 555(b)).  Absent binding precedent or a consensus on this Court supporting plaintiff's position that the INA imposes a non-discretionary duty on the government to adjudicate visas, *see, e.g.*, *Khamrabaeva v. Blinken*, No. 22-cv-1219 (RC), 2022 WL 4446387, at *5 (D.D.C. Sept. 24, 2022) (surveying different approaches to this question), this assumption of reviewability allows consideration of the merits of this visa mandamus claim, *see Farooqui v. Dep't of State*, No. 23-cv-1081 (TSC), 2024 WL 1178468, at *3–4 (D.D.C. Mar. 19, 2024) ("[C]ourts may assume without deciding that plaintiffs' statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (alterations in original) (quoting *Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) (quoting *Trump v. Hawaii*, 585 U.S. 667, 683 (2018))); *Khan v. Bitter*, No. 23-cv-1576, 2024 WL 756643, at *3 n.1 (D.D.C. Feb. 23, 2024) (assuming plaintiff's visa mandamus claims are reviewable under APA and turning straight to the *TRAC* factors); *Zandieh v. Pompeo*, No. 20-cv-919 (JEB), 2020 WL 4346915, at *11 (D.D.C. July 29, 2020) (explaining that "because it finds that the delay asserted here is not unreasonable," Court "need not decide whether plaintiffs' claims are reviewable under the APA" (quotation marks omitted) (quoting *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *7 (D.D.C. Mar. 19, 2020))); *Ghadami*, 2020 WL 1308376, at *7 (same); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (same); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175 & n.4 (D.D.C. 2020) (same); *see also Da Costa*, 80 F.4th at 340 (proceeding to consider whether the alleged delay was unreasonable where "USCIS does not contest Plaintiffs' assertions of a nondiscretionary duty on the part of the agency" (citations omitted)).  Thus, the merits of plaintiff's claim are properly considered.

relief because the roughly twenty-four month delay at issue is not unreasonable. *See* Defs.' Mot. at 3, 14–23.[4]   The law is well-settled that the APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).   "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take' . . . and, second, that the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020)).

In determining whether a delay in agency action is unreasonable, the D.C. Circuit has enumerated six so-called "*TRAC*" factors for consideration:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the

---

[4]   Although plaintiff alleges, without further specification, a delay by defendants of "over two years" in the adjudication of her daughter's visa application, Pl.'s Opp'n at 11, this is incorrect.   Delay is calculated by the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint, *see, e.g.*, *Oduor v. Blinken*, No. 23-cv-908, 2024 WL 1406548, at *4 (D.D.C. Mar. 29, 2024); *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *6 n.4 (D.D.C. June 26, 2023); *Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n.7 (D.D.C. 2022), which here was between June 17, 2020, when NVC determined that the visa petition for plaintiff's daughter was "documentarily qualified," *see* Pl.'s Opp'n at 6; *but see supra* n.1, and June 14, 2022, when plaintiff filed this suit, *see* Compl., with this time period of alleged delay amounting to just under twenty-four months.

To be sure, the actual wait period experienced by plaintiff and her daughter has been much longer, given that plaintiff filed the visa application on her daughter's behalf in March 2015.   *See* Compl. ¶ 13.   The total nine-year wait since 2015 has no doubt been "maddening."   *Da Costa*, 80 F.4th at 342.   Yet, "USCIS and the State Department have separate roles in processing visa applications and issuing visas," *id.* at 335, and while USCIS approved the petition in May 2015, *see* Pl.'s Opp'n at 2 (citing Compl. ¶ 13), the final action by the agency at issue here—the State Department, against which plaintiff brought suit—was not taken until June 17, 2020, when the State Department's NVC determined the case was "documentarily qualified," *see id.* at 6 (citing Armah Aff. ¶ 6).

> court need not find any impropriety lurking behind agency lassitude
> in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal citations omitted and formatting modified); *see also Da Costa*, 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors." (citing *id.*)); *Mukkavilli v. Jaddou*, No. 23-5138, 2024 WL 1231346, at *1 (D.C. Cir. Mar. 22, 2024) (same).  This standard applies to claims of unreasonable delay under both the Mandamus Act and the APA.  *See Norton*, 542 U.S. at 63–64; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

At the threshold, plaintiff tries to avoid application of the *TRAC* factors, arguing that due to the fact-intensive nature of the *TRAC* inquiry, evaluation of the factors is not appropriate at the motion to dismiss stage.  Pl.'s Opp'n at 6, 15–16.  Indeed, the D.C. Circuit has cautioned that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court," *Mashpee Wampanoag Tribal Council, Inc. v. Norton* ("*Mashpee*"), 336 F.3d 1094, 1100 (D.C. Cir. 2003).  Consequently, when the available factual information in the record is severely limited or disputed to ascertain when or what agency action has been taken, employing the *TRAC* factor analysis may be premature at the motion to dismiss stage.

By contrast, where the factual allegations are more fulsomely supplied and, as here, specific dates when relevant agency action occurred are undisputed, application of the *TRAC* factors at the motion to dismiss stage is appropriate to determine whether plaintiff has alleged facts sufficient to state a claim for unreasonable delay.  *See, e.g.*, *Mukkavilli*, 2024 WL 1231346, at *1–2 (affirming dismissal of unreasonable-delay claim following weighing of *TRAC* factors); *Da Costa*, 80 F.4th at 339–46 (same); *see also Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) (collecting cases reflecting "the majority view in

this District [] that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay").[5]  Here, the record provides sufficient discernible and undisputed facts to evaluate the *TRAC* factors and determine whether plaintiff's complaint alleges facts sufficient to state a plausible claim for unreasonable administrative delay.  This Court finds that in this case, the agency's delay in adjudicating plaintiff's daughter's visa application is not unreasonable.

1.    ***TRAC* Factors 1 & 2**

The first *TRAC* factor—whether the agency follows a rule of reason in processing visas— is among the "most important in this case," *Da Costa*, 80 F.4th at 340; *see also In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), and is often considered together with the second *TRAC* factor—whether "Congress has established a timetable," *Mukkavilli*, 2024 WL 1231346, at *1.  Both factors weigh in defendants' favor.

The D.C. Circuit has explained that, in assessing the first *TRAC* factor, "whether an agency follows a rule of reason, we evaluate the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.'"  *Da Costa*, 80 F.4th at 340 (quoting *Mashpee*, 336 F.3d at 1102).  Here, defendants offer a spare description of statutes or policies guiding the processing of visas, citing primarily to the State Department's website, which reportedly outlines the process as follows: "after USCIS

---

[5]    Plaintiff cites four non-binding district court cases declining to apply the *TRAC* factors at the motion to dismiss stage based on the lack of "sufficient record to answer [the] question" whether "the agency has unreasonably delayed adjudication" of the plaintiff's visa application.  *Addala v. Renaud*, No. 1:20-cv-2460 (RCL), 2021 WL 244951, at *3 (D.D.C. Jan. 25, 2021); *see* Pl.'s Opp'n at 16 (citing *Addala*, 2021 WL 244951, at *1, 3; *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020); *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020); and *Raju v. Cuccinelli*, No. 20-cv-1386 (AGT), 2020 WL 4915773, at 3 n.2 (N.D. Cal. Aug. 14, 2020)).  Parsing the underlying facts in those four district court cases to identify distinctions with this one is an unnecessary exercise since this Court relies on clear, binding authority that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when, as here, the facts alleged do not support a plausible claim of unreasonable delay.  *See, e.g.*, *Mukkavilli*, 2024 WL 1231346, at *1–2; *Da Costa*, 80 F.4th at 339–40.

approves an immigrant visa petition, USCIS transfers the case to the NVC," and then the case "goes through a series of steps while pending at the NVC—*e.g.*, the noncitizen submits certain paperwork and pays certain fees." Defs.' Opp'n at 3–4 (citation omitted). "Once the NVC processing is complete, the noncitizen's visa interview appointment is scheduled with the relevant in-country consulate," *id.* at 4 (citations omitted), but such visa "[i]nterviews are scheduled based on, among other things, the capacity of the consular offices and embassies,'" *id.* at 10 (alteration in original) (quoting *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 15 (D.D.C. 2022)).

Pointing to the online administrative steps an applicant for a visa must follow falls short, however, of describing any internal rationale or policy dictating how defendants approach the task of processing visas at each step, which is the focus of the first *TRAC* factor. For example, nowhere do defendants indicate whether visa applications, generally, are processed in the order which the petitions are received or completed, a processing prioritization that has been found to be reasonable. *Cf. Da Costa*, 80 F.4th at 340–41 ("conclud[ing] that USCIS employs a rule of reason to adjudicate Form I-526 petitions . . . from nationals of countries as to which visas are currently available in the order in which those petitions were received."); *id.* at 341 ("USCIS does have a processing logic: Its stated policy is to prioritize earlier-filed ahead of later-filed petitions from any country as to which EB-5 visas are available."). This lack of a detailed and fulsome explication by defendants of the rationale and statutory and regulatory guideposts applied in the processing of visa applications complicates consideration of the first *TRAC* factor. *See id.* at 346 ("observ[ing] here . . . that the advocacy on appeal fell short of the high standards we expect from counsel for the United States. We trust the government will take the requisite steps to ensure that its future advocacy on behalf of USCIS is appropriately clear and informed.").

Nevertheless, while plaintiff complains, without elaboration, that "the time Defendants have taken to adjudicate her relative's application is not governed by a rule of reason," Pl.'s Opp'n at 11–12 (citing Compl. ¶¶ 19–31), she does not challenge the rationale defendants employ to process visa petitions once those documents are located at NVC, nor credibly allege that defendants "follow[ed] a process other than its officially stated policy," *Da Costa*, 80 F.4th at 346. Instead, she only complains that this process has produced "unreasonable" delay. Pl.'s Opp'n at 11–12. Delays, even long ones, in obtaining visa approval do not, standing alone, indicate that defendants' process flunks the "rule of reason" test. *See Da Costa*, 80 F.4th at 342 (observing that "the length of the wait alone is not sufficient to show that USCIS does not follow a rule of reason in processing EB-5 applications," noting that considering obstacles of a "pause in statutory authorization and the serious practical challenges posed by a global pandemic . . . together with the competing demands on the agency, we cannot say as a matter of law that the processing time itself establishes that USCIS lacks a rule of reason").

Consideration of whether delays are unreasonable necessarily implicates the statutory deadlines imposed by Congress, which is the second *TRAC* factor, and "the level of disproportionality we have previously held sufficient to grant relief." *Id.* at 344. Defendants are correct that Congress has set no firm statutory deadline for completing the processing of visas, Defs.' Opp'n at 16, but instead given agencies "wide discretion" in their visa processing timelines, *id*. at 16–17 (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153 (D.D.C. 2017)); *see Da Costa*, 80 F.4th at 339–40 (finding "the absence of a statutory deadline . . . also favor[s] dismissing the claims"). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Kahenya v. Blinken*, No. 23-cv-740 (TSC), 2024 WL 1253854, at *3 (D.D.C. Mar. 25, 2024) (citation omitted). Even though courts have drawn no bright lines to determine reasonableness,

"[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Yavari v. Pompeo*, No. 19-cv-2524 (SVW) (JC), 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (citing *Siwen Zhang v. Cissna*, No. 18-cv-9696 (MWF) (JCX), 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019)); *Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at *4 (D.D.C. Mar. 28, 2024) (citing cases noting the same); *Skalka*, 246 F. Supp. 3d at 153–54 (finding that a roughly two-year delay in processing a visa application is not unreasonable); *see also Farooqui*, 2024 WL 1178468, at *5 (same).   Notably, in *Da Costa*, the D.C. Circuit  affirmed dismissal of a visa applicant's unreasonable delay claim, concluding that, while "undoubtedly maddening," the four-and-a half year delay "is not sufficient to show that USCIS does not follow a rule of reason in processing EB-5 applications." 80 F.4th at 339–340, 342.   Reasonableness in this context "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee*, 336 F.3d at 1102; *see also Da Costa*, 80 F.4th at 340.

Consideration of agency resources and the context of an agency action is critical to the determination of reasonableness. *See Da Costa*, 80 F.4th at 342 ("When an agency faces a shortage of resources to resolve a backlog, we consider those resource limitations and the labor needed to resolve them in assessing agency delay." (citing *Mashpee*, 336 F.3d at 1100, 1102)).   In 2020, two years before plaintiff filed the instant complaint on behalf of her daughter, U.S. consulates and embassies shut down across the globe due to the COVID-19 pandemic.   The ensuing backlog of visa applications and the ongoing importance of public health considerations in consular operations continue to affect the processing of immigration procedure today.   *See* Defs.' Mot. at

4–6.  The visa backlog due to the COVID-19 pandemic and strain on agency resources following the health crisis is important context with an impact on the processing times for visa applications. These circumstances weigh in defendants' favor in the *TRAC* factor analysis.  *See Da Costa*, 80 F.4th at 342 (citing global pandemic as consideration in assessing first *TRAC* factor); *Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *3 (D.D.C. Feb. 16, 2022) (finding that "operational delays due to the COVID-19 pandemic favor the [g]overnment on the first two [*TRAC*] factors" (citations omitted)); *see also Kahenya*, 2024 WL 1253854, at *3 (same); *Rahimian*, 2023 WL 143644, at *7 (same); *Khan v. Blinken*, No. 21-cv-1683 (JEB), 2021 WL 5356267, at *4 (D.D.C. Nov. 17, 2021) (same); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19- cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (same).[6]

Taken altogether, the first and second *TRAC* factors favor defendants.

### 2.    *TRAC* Factors 3 & 5

The third and fifth *TRAC* factors are related and together examine "the nature and extent of the interests prejudiced by the delay," including whether "human health and welfare" might be implicated.  *TRAC*, 750 F.2d at 80 (citations omitted); *see Da Costa*, 80 F.4th at 344–45 (considering *TRAC* factors three and five together).  Plaintiff alleges that she has faced serious personal hardship from the delay of her daughter's visa adjudication and, contrary to defendants' assertion, Defs.' Mot. at 21–22, the third and fifth *TRAC* factors thus weigh slightly in plaintiff's favor.

---

[6]      Plaintiff cites several pre-pandemic, out-of-district cases finding unreasonable a delay of "more than two-year[s]," *Gelfer v. Chertoff*, No. 06-cv-6724 (WHA), 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007), or "almost four [] years," *Ren v. Mueller*, No. 07-cv-790 (ORL) 19DAB, 2008 WL 191010, at *11 (M.D. Fla. Jan. 22, 2008); *see* Pl.'s Opp'n at 11 (collecting cases).  These cases preceded the COVID-19 engendered disruption of the processing of visa applications, and thus evaluated the reasonableness of delay in a far different context than applies here.

Prolonged separation from a child or other immediate family member may be considered a risk to human health and welfare. *See Oduor*, 2024 WL 1406548, at *5 (finding the third and fifth *TRAC* factors to weigh in favor of plaintiffs given the continued separation from plaintiff's two sons (citation omitted)); *see also Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *4 (D.D.C. Apr. 29, 2022) (same as to separation from wife and son, where plaintiff "has not had any contact with his family since April 2021" (citation omitted)). Plaintiff alleges that she has suffered emotional and health-related consequences because of her separation from her daughter, particularly around the time plaintiff underwent lung mass surgery. *See* Pl.'s Opp'n at 2 ("Ms. Armah desperately still needs her daughter with her in the United States to help with daily activities, provide care and emotional support, and ensure that Ms. Armah is receiving proper medical care." (citing Armah Aff. ¶ 11)).

Defendants do not contest that "the delay in scheduling an interview with a consular officer . . . has profoundly impacted the lives of Plaintiff and her daughter." Defs.' Mot. at 21 (citing Compl.). Nonetheless, defendants maintain that the third and fifth factors weigh in their favor because expediting review in plaintiff's case may cause harm to those visa applicants whose applications would be further delayed by giving plaintiff priority and expediting adjudication of her daughter's application. *Id.* at 21–22. In the aggregate, delaying those other applications in favor of plaintiff's would, according to defendants, "direct resources away from the adjudications that the State Department has identified as more urgent[.]" *Id.* at 21 (citations omitted).

Defendants' point about resource allocation is well taken, but pertinent to analysis of the next *TRAC* factor, since the individual health or welfare of this specific plaintiff is most relevant when evaluating *TRAC* factors three and five. *See, e.g.*, *Khan*, 2024 WL 756643, at *5; *Rahimian*,

2023 WL 143644, at *8 n.7.  Thus, considering the harm experienced by this particular plaintiff if her daughter's visa application is further delayed, *TRAC* factors 3 and 5 weigh in plaintiff's favor.

### 3.     *TRAC* Factor 4

The fourth *TRAC* factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80 (citations omitted).  Defendants correctly point out that this factor "carries significant weight" in the *TRAC* analysis.  Defs.' Mot. at 19 (citing *Mashpee*, 336 F.3d at 1100).  This factor weighs heavily in defendants' favor, particularly in context of the ongoing recovery efforts and reducing the accumulated backlog from the COVID-19 pandemic.

Granting expedited agency action is considered inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "'no net gain'" in adjudications achieved.  *Da Costa*, 80 F.4th at 343–44 (quoting *Burwell*, 812 F.3d at 192, and *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  In particular, "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities."  *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005).

Plaintiff cites pre-pandemic, out-of-circuit district court cases in support of her argument that "she should not bear the consequences of the [pandemic-related] delay," Pl.'s Opp'n at 12, yet advances no explanation for why other visa applications would not be further delayed if defendants expedited her daughter's application, *see* Pl.'s Opp'n at 12–13; *see Da Costa*, 80 F.4th at 343 ("Plaintiffs' argument that granting relief would not prejudice other applicants rests on wishful thinking about how the USCIS adjudication system works.").  Post-pandemic, normal visa processing requires accommodating the backlogs of the hundreds of thousands of visa applications still awaiting adjudication due to staffing and resource shortages arising during the height of the

COVID-19 pandemic.  Expediting review in plaintiff's daughter's case "would necessarily come at the expense of other similarly situated applicants, unlike broader relief that would avoid line-jumping concerns." *Da Costa*, 80 F.4th at 344 (quotation marks and citation omitted); *see also Bagherian*, 442 F. Supp. 3d at 95 (finding fourth *TRAC* factor favors the government, where "[e]xpediting review in [plaintiff's] case . . . would merely pull government resources" away from other visa adjudications and agency business); *Didban*, 435 F. Supp. 3d at 176 (holding that reordering agency business "would impermissibly interfere with the agency's 'unique' and 'authoritative [] position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way'" (alteration in original) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d at 76) (other citation omitted)); *see Immigrant Visa Interview-Ready Backlog Report*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (last updated May 2024) (providing data and information about the backlog in visa applications still faced by the State Department post-pandemic).  Since the D.C. Circuit recognizes "no basis for reordering agency priorities," *In re Barr Lab'ys, Inc.*, 930 F.2d at 76, this factor weighs in favor of defendants.

### 4.    *TRAC* Factor 6

As to the sixth and final *TRAC* factor, which provides that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80 (citation omitted), plaintiff "does not allege that Defendants' delay was caused by bad faith *per se* . . . so there is no need for the Court to consider" this factor. Pl.'s Opp'n at 13.  Despite plaintiff's understandable frustration with the visa application process given her long separation from her daughter, as plaintiff concedes, the delay alone does not demonstrate any agency misconduct.

5.      *TRAC* **Factors Considered in Totality**

Taking all six *TRAC* factors as a whole, plaintiff has not stated a claim of unreasonable delay under the Mandamus Act or the APA.  In other cases, delays in visa processing of even longer duration than presented here have resulted in the same conclusion.  *See, e.g.*, *Da Costa*, 80 F.4th at 342 (concluding a four-and-a-half year processing delay does not "itself establish[] that USCIS lacks a rule of reason"); *Akrayi v. U.S. Dep't of State*, No. 22-cv-1289 (CRC), 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023) (finding the nearly three-year "delay in processing . . . does not reach the length that courts have found unreasonable"); *Rahimian*, 2023 WL 143644, at *7 (reaching the same conclusion based on visa processing delay of forty-one months); *Arab*, 600 F. Supp. 3d at 70 (same, based on visa processing delay of thirty months); *Zaman*, 2021 WL 5356284, at *6–7 (same, based on visa processing delay of forty-two months).  The context of agency resource backlogs stemming from the COVID-19 pandemic, and the fact that granting plaintiff relief would merely reorder her daughter's application in the queue, all support the conclusion that the delay in adjudication of plaintiff's daughter's visa is not unreasonable.  While *TRAC* factors three and five do favor plaintiff, a holistic review of the factors does not allow these two to "tip the scales" and eclipse the rest.  *Mukkavilli*, 2024 WL 1231346, at *2 (quoting *Da Costa*, 80 F.4th at 344).  In this situation, "the government's interests in balancing its own priorities" outweighs the individual harm done to plaintiff and her daughter as they await a final decision.  *Milligan*, 502 F. Supp. 3d at 320 (quoting *Bagherian*, 442 F. Supp. 3d at 96).

This Court has deep sympathy for plaintiff and her daughter during their separation, but must also recognize that countless other families are facing similarly difficult circumstances as they await immigration decisions.  *See Da Costa*, 80 F.4th at 346 (affirming dismissal where "[r]uling in favor of Plaintiffs would require USCIS to process Plaintiffs' petitions ahead of those

of other petitioners who have been waiting as long or longer for their EB-5 petitions to be adjudicated"); *Burwell*, 812 F.3d at 192 (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants").  Plaintiff's claim thus must be dismissed for failure to state a claim.

### B. Plaintiff Fails to State a Claim of Intentional Delay Based on CARRP.

Plaintiff claims that defendants "are intentionally delaying a response to the [State Department] in regard to [her daughter's] visa application pursuant to the CARRP program." Compl. ¶ 25; *see also* Pl.'s Opp'n at 13–14.  According to plaintiff, CARRP defines "national security concern" "far more expansive[ly] than the security-related ineligibility criteria for immigration applications set forth by Congress in the INA" by using "deeply-flawed and expansive government watchlists, and other vague and overbroad criteria[.]" *Id.* ¶ 28.  Given that plaintiff's daughter is from, as plaintiff describes, a "predominantly Muslim country," plaintiff alleges that the unlawful application of CARRP "brands innocent, law-abiding residents, like [plaintiff's daughter] . . . as 'national security concerns' on account of innocuous activity and associations, and characteristics such as national origin." *Id.* ¶¶ 25, 28.[7]  Defendants counter that plaintiff's CARRP claim is "[u]ntenable" because plaintiff "offers nothing more than speculation that CARRP has played any role in the delay" of her daughter's visa application.  Defs.' Mot. at 23 (citing Compl. ¶ 25).  Even assuming that the State Department utilizes CARRP in coordinating

---

[7]        Defendants challenge plaintiff's assertion that Ghana is a "predominantly Muslim country," Compl. ¶ 12, citing the U.S. State Department International Religious Freedom Report indicating that in Ghana, "approximately 71 percent of the population is Christian, 18 percent is Muslim . . . ." Defs.' Mot. at 24 n.5 (emphasis omitted) (quoting U.S. DEP'T OF STATE, *Ghana 2021 International Religious Freedom Report* 2, https://www.state.gov/wp-content/uploads/2022/04/GHANA-2021-INTERNATIONAL-RELIGIOUS-FREEDOM-REPORT.pdf).  This is not a factual dispute necessary to resolve.

with the Department of Homeland Security, as plaintiff alleges, *see* Compl. ¶¶ 23–29, defendants are correct that the CARRP claim fails.

To support her CARRP claim, plaintiff relies on allegations based "on information and belief" that defendants are intentionally delaying resolution of her daughter's visa application pursuant to the CARRP program, and that the USCIS and the State Department are "complicit" in doing so. *Id*. ¶ 25–26. She provides zero factual allegations, other than apparent delay, for this claim and makes no effort to reconcile this bald allegation about USCIS being somehow "complicit" in CARRP-based delays with the fact that her daughter's visa petition was approved by the very same USCIS. *See id.* ¶ 15. Courts "do not assume the truth of legal conclusions," nor do they "accept inferences that are unsupported by the facts set out in the complaint.'" *Air Excursions LLC*, 66 F.4th at 277 (citations omitted). Given the absence of any factual predicate, defendants' motion to dismiss the CARRP claim is granted. *See Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021) (concluding plaintiff "has not stated a claim nor alleged an injury-in-fact" with respect to CARRP claim, where plaintiff's "'information and belief' CARRP claim is unsupported by any factual allegations specific to [plaintiff's] application" (citations omitted)); *Ghadami*, 2020 WL 1308376, at *6 (dismissing a similar claim because plaintiffs failed to "set forth any factual allegations to support" the conclusion that defendants intentionally delayed adjudicating plaintiff's visa application pursuant to CARRP); *see also Al-Saadoon v. Barr*, 973 F.3d 794, 804 (8th Cir. 2020) (affirming a dismissal of CARRP claim on the same ground).[8]

---

[8] Indeed, CARRP is a USCIS policy, and USCIS has completed its role in processing the application. Moreover, as several other courts have found, publicly available documents released by USCIS state that CARRP does not apply to I-130 petitions. *See Mahmood*, 2021 WL 5998385, at *5–6 & n.6 (citing U.S. CITIZENSHIP AND IMMIGR. SERVS., *Fraud Detection & National Security Controlled Application Review and Resolution Program (CARRP) Independent Study* 28 (Dec. 28, 2011), https://www.aclusocal.org/sites/default/files/wp-content/uploads/2013/01/FDNS-CARRP-Independent-Study-Powerpoint-v.-1.1-Dec.-28-2011.pdf); *Ghadami*, 2020 WL 1308376, at *6 n.3 (same); *Alshawy v. U.S. Citizenship & Immigr. Servs.*, No. 21-cv-2206 (FYP), 2022 WL

### C.      Plaintiff's Due Process Claim Fails.

Finally, plaintiff contends that the delay in adjudication of her daughter's visa application deprives her of procedural due process rights under the Fifth Amendment.  *See* Compl. ¶¶ 35–36; Pl.'s Opp'n at 14.  Defendants counter that plaintiff has not asserted a constitutionally protected right that has been violated.  *See* Defs.' Mot. at 25 ("Congress is entitled to set the conditions for an alien's lawful entry . . . [and] an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)).

To succeed on a procedural due process claim, plaintiff must first "identify a cognizable liberty or property interest."  *Scahill v. District of Columbia*, 909 F.3d 1177, 1186 (D.C. Cir. 2018); *see also Dean v. U.S. Dep't of Homeland Sec.*, No. 21-cv-2002 (CKK), 2022 WL 2785967, at *9 (D.D.C. July 15, 2022).  "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009)).

Plaintiff identifies a constitutionally protected interest in "the application for her daughter's visa" and in "receiving a final answer and proper adjudication of the case . . . without unnecessary delay."  Pl.'s Opp'n at 14–15.  Yet, "there is no property right in an immigrant visa," *Mahmood*, 2021 WL 5998385, at *10 (citation omitted), and a noncitizen has neither a right to a visa, *see Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972), nor "a constitutionally-protected interest in the procedures by which such visas are obtained," *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C.

970883, at *4 (D.D.C. Mar. 30, 2022) (same); *see also Abbas v. U.S. Dep't of Homeland Sec.*, 20-cv-03192 (CJN), 2021 WL 3856625, at *2 n.3 (D.D.C. Aug. 29, 2021) (noting that "CARRP is not used in the Form I-130 context"). Consequently, plaintiff's unsupported allegations fail to establish that CARRP played or continues to play a role in any delay in processing the visa application at issue.

2011), *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012) (citing *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affs.*, 104 F.3d 1349, 1353 (D.C. Cir. 1997)); *see Herdoiza v. Dep't of State*, No. 23-cv-1020 (TSC), 2024 WL 1212952, at *5 (D.D.C. Mar. 21, 2024) (similar); *see also Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 20 (D.D.C. 2022) (dismissing procedural due process claim where, under Supreme Court precedent, "an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause" than those set by Congress, so "the visa-application procedures cannot violate the Due Process Clause because '[w]hatever the procedure authorized by Congress is, it is due process'" (alteration in original) (quoting *Thuraissigiam*, 591 U.S. at 107, and *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950))).  Nor does plaintiff's daughter have "a constitutional right to have [her visa] . . . doled out as quickly as [s]he desire[s]."  *Mudric v. Att'y Gen.*, 469 F.3d 94, 99 (3d Cir. 2006).

Plaintiff urges this Court to "follow" *Cruz v. Sullivan*, 802 F. Supp. 1015, 1016 (S.D.N.Y. 1992), a non-binding out-of-district case recognizing that "[f]undamental fairness in administrative proceedings is a prerequisite for judicial recognition of its results," Pl.'s Opp'n at 15 (quoting *Cruz*, 802 F. Supp. at 1017).  Yet *Cruz*, which involved a claim for review of denial of disability benefits, is wholly inapposite to this case, where plaintiff's daughter has not been denied adjudication of her visa.  *See Cruz*, 802 F. Supp. at 1017.  Rather, the visa petition remains pending and will, following an interview before a consular officer, ultimately be adjudicated.

Given that plaintiff has failed to identify a liberty or property interest of which plaintiff or her daughter has been deprived, plaintiff's procedural due process claim fails at the threshold.

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's complaint is granted. An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date:   May 28, 2024

_____
**BERYL A. HOWELL**
United States District Judge